**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| The United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | 0:25-CR-00067-PJS-SGE |
| | ) | |
| v. | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **DEFENDANT'S MOTIONS** |
| William Michael Haslach, | ) | **TO SUPPRESS AND DISMISS** |
| | ) | |
| Defendant. | ) | |
| | ) | |

TO:   UNITED STATES MAGISTRATE JUDGE SHANNON G. ELKINS; CARLA BAUMEL, ASSISTANT UNITED STATES ATTORNEY; CLERK OF COURTS FOR UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA.

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTIONS TO SUPPRESS AND DISMISS**

This matter came before the Honorable Shannon G. Elkins on October 1, 2025, for a hearing on Defendant's Motions to Suppress and Dismiss. Justin Duffy appeared on behalf of Defendant William Haslach. Carla Baumel appeared on behalf of the United States of America.

At the hearing, testimony was taken from Detective Olaf Mark. The Court received three exhibits:

1. Search warrant and search warrant application related to Maplewood apartment
2. Law enforcement communications with signing judge after warrant had been executed
3. Photographs of exterior of Maplewood apartment building and hallway outside door

Defense counsel requested that the photograph the Government relies upon for Count I, which is in the possession of the United States Secret Service, be provided to the Court or made available to the Court for viewing as part of deciding these motions. The Court stated it would take that request under advisement along with the motions. It was determined that the parties

1

would submit written briefs on the issues, with Defendant's brief due November 5, 2025, and the Government's brief due November 19, 2025.

## FACTS

On January 2, 2025, Maplewood Police Detective Olaf Mark began investigating a Cybertip that had been relayed to him by the BCA. (Transcript, hereinafter "T.", 9.) The BCA had received that tip in early December 2024. (T. 40.) The Cybertip related to files containing child sexual abuse materials. (T. 12.) The BCA had conducted some investigation prior to forwarding that tip to Maplewood Police. (T. 40-42.) An IP address that was associated with the information in the tip was connected to a Comcast account belonging to Mr. Haslach's wife at 1257 Century Ave. N., Apartment 25 in Maplewood. (T. 11, 53; Ex. 1.) Mr. Haslach's driver's license listed that same address. (T. 53; Ex. 1.) Detective Mark believed that Mr. Haslach's wife now no longer resided at that address, but instead in Stillwater. (T. 12; Ex. 1.)

Detective Mark was aware that 1257 Century Ave. N. was the address of an apartment building, containing multiple individual apartments. (T. 44-45.) Law enforcement observed Mr. Haslach exit that building, but never observed him exit or enter Apartment 25 specifically. (T. 46.) Detective Mark never spoke with the landlord or obtained rental records to confirm that Mr. Haslach still resided in Apartment 25. (T. 46-47.)

On January 15, 2025, Detective Mark applied for a search warrant related to Mr. Haslach's apartment in Maplewood. (T. 42; Ex. 1.) The search warrant was signed by Ramsey County District Court Judge Jennifer Verdeja on that same day. (T. 42; Ex. 1.) That search warrant was granted based solely on the assertions made in the written search warrant application that had been submitted. (T. 42.) The "Premises" section on page 1 of the Search Warrant and page 2 of the Search Warrant Application lists the general address for the entire apartment

2

building, but does not specify a particular apartment, and further authorizes the search of "all garages and all storage areas." (T. 44-45; Ex. 1.) The search warrant application that was submitted did not include any information about actually observing Mr. Haslach at that apartment building at all. (T. 47; Ex. 1.)

After executing the warrant, Detective Mark realized that a specific apartment number had not been included in the premises section of the search warrant or the search warrant application. (T. 37, 43-45.) Detective Mark then reached out to the signing judge's chambers via email a few days after the warrant was executed seeking to amend the warrant to include the missing apartment number. (T. 37; Ex. 2.) In that email correspondence he described it as an "error" in the warrant that was discovered after it had been executed. (Ex. 2.) Detective Mark did not mention this email correspondence in any of his police reports. (T. 45.) Detective Mark did not inform the Government about his email correspondence with the signing judge's chambers until the week prior to the evidentiary hearing held on October 1, 2025. (T. 45.)

Detective Mark stated during his testimony, for the first time, that he believed the lack of an apartment number in the "Premises" section of the search warrant and warrant application was due to a software error that caused the apartment number to be removed. (T. 44.) Detective Mark had not included any of his claims about a software error in his previous correspondence with the signing judge. (T. 44; Ex. 2.)

After the date that the search warrant was executed, law enforcement found a picture of a student that was taken under a desk. This under the desk photograph is what the Government has stated Count I of the Superseding Indictment is based on.

Mr. Haslach was arrested at the time the search warrant was executed and interrogated by Detective Mark shortly thereafter that same morning. (T. 27, 32-33.) At no point did Detective

3

Mark question him about the under the desk photograph and Mr. Haslach made no statements about the under the desk photograph. (T. 48.) Mr. Haslach never stated that he took a picture under a desk hoping to catch a slipped bathing suit. (T. 48.) Any discussion of slipped bathing suits was in the context of Detective Mark asking him about photographs taken at a swimming pool that involved bathing suit tops being off. (T. 48-50.) As it pertains to the under the desk photograph, the Government has stated that "as Haslach has explained, he attempted to capture a 'slip' of the child's bathing suit to see her genitals and pubic area while her legs were splayed." (Dkt. 38, p. 11.) The Government's statement is directly contradicted by the testimony of Detective Mark and unsupported by the record. (T. 48-50.) Further, any claim by the Government that Haslach stated he took photographs of children in swimsuits "hoping" to catch a "slip" of their swimsuit is similarly unsupported by the record. (*Compare* T. 48-50 and Dkt. 38, p. 13.)

## ARGUMENT

### I.      Count I of the Superseding Indictment Should be Dismissed

Defendant moves the Court for an Order dismissing Count I of the Superseding Indictment because there is insufficient evidence to support a finding of probable cause for that charge given the circumstances, characteristics and nature of the particular photograph that the Government has stated that allegation is based upon.

   A. The Court Should Conduct a *Rayl* Review

The Court has authority to determine, as a matter of law, whether a particular photograph depicts sexually explicit conduct, such as a lascivious exhibition of the genitals. *United States v. Rayl*, 270 F.3d 709, 714 (8th Cir. 2001); *See also* Eighth Circuit Manual of Model Jury Instructions—Criminal, Instruction 6.18.2252A – Annotations.

4

The Government has objected to the Court undertaking the requested review, but that position is unsupported by case law. The *Rayl* decision, and its inclusion in the Eighth Circuit's Model Jury Instructions, makes clear that this type of review is appropriate and necessary in these types of cases due to the risk of prejudice involved in showing images of this nature to a jury. *Id.*

> Because the issue raises First Amendment concerns, and because of the potential prejudice in allowing the government to introduce and submit to the jury a large volume of materials that are prurient but non-obscene along with a few materials that could properly be found to be child pornography, we think the district court should conduct a preliminary review of whether materials offered by the government for this purpose depict sexually explicit conduct as a matter of law.

*Rayl*, 270 F.3d at 714.

> In *United States v. Rayl*, 270 F.3d 709, 714 (8th Cir. 2001), the court held that the question whether materials depict a "lascivious exhibition of the genitals" is for the finder of fact. However, the meaning of "lascivious exhibition of the genitals" is an issue of law. The district court therefore should, before submitting materials offered by the government to the jury, conduct a preliminary review of whether those materials depict sexually explicit conduct as a matter of law.

Eighth Circuit Manual of Model Jury Instructions—Criminal, Instruction 6.18.2252A – Annotations.

The Government has argued that a *Rayl* review is inappropriate here because "A *Rayl* review is designed for cases in which there arises 'potential prejudice in allowing the government to introduce and submit to the jury *a large volume of materials that are prurient but non-obscene*' alongside the charged imagery." (Dkt. 38, p. 10 (*emphasis in Gov't Response*).)

That argument is a misinterpretation of *Rayl*. The imagery admitted in *Rayl* was the imagery that the Government's allegation was premised upon. *Rayl*, 270 F.3d at 714-15. It was not submitted "alongside the charged imagery" as asserted by the Government. It was the imagery that the charge in that case was premised upon. *Id*. *Rayl* stands for the principle that it is

5

necessary for the Court to conduct a preliminary analysis to see whether a particular image that the Government has premised its allegation upon could actually meet the statutory definition as a matter of law before it is provided to a jury for consideration.

The fact that *Rayl* involved a "large volume" of images or videos is immaterial. The logic of *Rayl* applies with equal weight whether there is one image at issue or one hundred. And the logic is that preliminary review by the Court is necessary due to the risk of unfair prejudice involved with showing a jury an image that is prurient, unseemly or societally unacceptable, but not actually criminal.

The propriety of a *Rayl* review is further supported by the *Petroske* case, which was referenced by the Government in oral argument during the evidentiary hearing, wherein Judge Schiltz undertook a review of materials at issue in that case to make determinations as a matter of law prior to submission to a jury. *United States v. Petroske*, No. 17-CR-0116 (PJS/LIB), 2018 WL 672505, at *2 (D. Minn. Feb. 2, 2018), *aff'd,* 928 F.3d 767 (8th Cir. 2019).

For these reasons, this Court should conduct a *Rayl* review of the image the Government bases Count I on.

B.  The Court Should View the Photograph at Issue

When analyzing this issue, the Court should review the under desk photograph the Government has based this charge on in order to draw its own conclusions of how that image fits within the applicable legal framework, rather than merely relying on verbal descriptions from either party.

As the saying goes, a picture speaks a thousand words. A review of the image itself is the only way for the Court to obtain a full understanding of what is depicted therein. In a similar vein, there is the well known quote from a United States Supreme Court Justice regarding

obscene materials: ". . .I know it when I see it. . ." *Jacobellis v. State of Ohio*, 378 U.S. 184, 197, 84 S. Ct. 1676, 1683, 12 L. Ed. 2d 793 (1964).

In order to conduct the necessary analysis, the Court needs to view the image. In *Petroske*, a review of the videos at issue in that matter was undertaken as part of the *Rayl* review. 2018 WL 672505, at *2. For these reasons, arrangements should be made for the Court to review the under the desk photo at issue, which is in the possession of the United States Secret Service.

C. The Court Should Dismiss Count I

The Court should dismiss Count I of the Superseding Indictment because the under the desk photograph that allegation is based upon, as a matter of law, cannot be properly found to constitute a lascivious exhibition of the genitals and there is insufficient evidence of intent to produce any image that would actually meet that statutory requirement.

The photograph at issue does not depict any nudity. The photograph is of a student seated on a chair at a desk or table in a classroom. The student is wearing a one piece swimsuit. The student has their feet up on the seat of the chair with their heels pulled towards their thighs. The student's legs are open. A wide metal bar under the desk largely blocks the view of the genital area. Even if the metal bar did not block the view, the genital area would be covered by the swimsuit. The photo is from the perspective of underneath the desk. The photo shows essentially all of the student's body other than their head, as well as the classroom around and behind the student. The student has cards in their hands.

The setting of the image, a classroom, is not sexually suggestive. The student is not wearing inappropriate attire or in an unnatural pose. The student is not nude. The photograph does not suggest sexual coyness or a willingness to engage in sexual activity. The image does not portray the student as a sexual object. There are no captions associated with the photograph.

7

It is a crime for any person to employ, use, persuade, induce, entice or coerce a minor to engage in any sexually explicit conduct for the purpose of producing a visual depiction of such conduct. 18 U.S.C. § 2251(a). Sexually explicit conduct, as is pertinent to the present case, includes "lascivious exhibition of the anus, genitals, or pubic area of any person." 18 U.S.C. § 2256(2)(A)(v).

Within the Eighth Circuit, the following non-exhaustive factors are considered in determining whether an image meets the lasciviousness requirement: (1) whether the focal point of the image is on the minor's genital or pubic area; (2) whether the setting of the image is sexually suggestive; (3) whether the minor is depicted in unnatural poses or inappropriate attire considering the minor's age; (4) whether the minor is fully or partially clothed or is nude; (5) whether the image suggests sexual coyness or a willingness to engage in sexual activity; (6) whether the image is intended to elicit a sexual response in the viewer; (7) whether the image portrays the minor as a sexual object; and (8) any captions on the images. *United States v. Petroske*, 928 F.3d 767, 773 (8th Cir. 2019).

The first six of those factors are often referred to as the *Dost* factors. Other courts have criticized reliance on the *Dost* factors, in particular the sixth factor. In *United States v. Hillie*, the *Dost* factors were rejected and convictions for attempted production of child pornography were overturned with directions that a judgement of acquittal be entered on those counts. 39 F.4th 674 (D.C. Cir. 2022).

The charges in *Hillie* included allegations of attempted production of child pornography based on the defendant's actions in creating four videos made by hiding a video camera in a bathroom ceiling vent and in a bedroom dresser. *Id.*, at 690. That court construed "lascivious exhibition of the anus, genitals, or pubic area of any person" to mean that the minor displayed

8

their anus, genitalia, or pubic area in a manner connoting that the minor, or any person or thing appearing with the minor in the image, exhibits sexual desire or an inclination to engage in any type of sexual activity. *Id.*, at 685. "To fall within the definition of 'lascivious exhibition of the ... genitals,' JAA's conduct depicted in the videos must consist of her displaying her anus, genitalia or pubic area in a lustful manner that connotes the commission of a sexual act." *Id.*, at 686.

As part of that determination, the court explicitly rejected the *Dost* approach. *Id.* It held that the "fundamental premise" underlying the decision in *Dost* "is fatally flawed." *Id.*, at 687. The *Hillie* court also took particular issue with the sixth *Dost* factor regarding whether the image is intended to elicit a sexual response in the viewer, based on prior case law:

> When construing the federal promotion of child pornography offense, the Court explained that the statute cannot "apply to someone who subjectively believes that an innocuous picture of a child is 'lascivious.' " *Williams*, 553 U.S. at 301, 128 S.Ct. 1830. Instead, "[t]he defendant must believe that the picture contains certain material, and that material in fact (and not merely in his estimation) must meet the statutory definition. Where the material at issue is a harmless picture of a child in a bathtub and the defendant, knowing that material, erroneously believes that it constitutes a 'lascivious exhibition of the genitals,' the statute has no application." *Id.*

*Id.*, at 688.

The statutory prohibition on lascivious exhibition of the genitals refers to the conduct of the minor in the visual depiction, rather than the subjective response that may be elicited in one viewer of the image but not another.

That construction of what lascivious exhibition requires was then applied to the allegations of attempted production in *Hillie*. It was not claimed that Hillie intended to persuade, induce, entice, or coerce minor JAA to engage in sexually explicit conduct but rather that by hiding his video camera in the bedroom and bathroom, Hillie attempted to "use" or "employ" JAA to engage in sexually explicit conduct so that he could videotape such conduct. *Id.*, 690-91.

9

The court provided the following example of what could satisfy an attempt to "use" or "employ":

> [I]f a defendant, knowing that a minor masturbates in her bedroom, surreptitiously hides a video camera in the bedroom and films her doing so, then he uses or employs, i.e., avails himself of, a minor to engage in sexually explicit conduct (with herself) with the intent that she engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct.

*Id.*, at 691.

"[W]hen causing a particular result is an element of the crime, the defendant is guilty of attempt when he intended to cause such a result and did or omitted to do anything with the purpose of causing or with the belief that it would cause such result without further conduct on his part." *Id.* (internal quotations and alteration marks from original omitted). "[T]hat means the Government was required to prove that Hillie intended to use JAA to engage in the lascivious exhibition of her genitals by displaying her anus, genitalia, or pubic area in a lustful manner that connotes the commission of a sexual act." *Id.*

The court in *Hillie* held that was not only the proper construction for the offense of attempted production, but also that it was necessary to distinguish that offense from the offense of voyeurism, which prohibits the nonconsensual recording of the private parts of a person by placing a hidden camera in a bathroom or a bedroom. *Id.*

It was decided that "no rational trier of fact could find that Hillie intended to use JAA to display her anus, genitalia, or pubic area in a lustful manner that connotes the commission of a sexual act" because there is no evidence from which it could be reasonably inferred, without speculation, that Hillie intended to capture video footage of JAA not just in the nude, but of her engaging in sexually explicit conduct. *Id.* at 692.

10

This Court should follow the reasoning and interpretation of the charged statute from *Hillie*, rather than relying on the flawed *Dost* approach, in determining whether, as a matter of law, the under the desk photograph could ever properly support the attempted production allegation levied in Count I. Here, as in *Hillie*, there is insufficient evidence of an intent to capture a lascivious exhibition of the genitals as required by the charged statute, and as construed in *Hillie*, and that requires dismissal of Count I. There is no evidence, under those circumstances and in that setting, that it could have ever been expected or intended for any such picture to capture the student displaying her genitalia or pubic area in a lustful manner that connotes the commission of a sexual act. This was not a bedroom or bathroom containing a hidden camera, as was seen in *Hillie*. This was the middle of a classroom. There is insufficient evidence that Mr. Haslach intended to capture an image of the student seated at the desk engaging in sexually explicit conduct and Count I should be dismissed.

Even if the present matter is considered under the guidance of the *Dost* factors, Count I of the Superseding Indictment should still be dismissed because there is not sufficient evidence to support a finding of probable cause when the circumstances at issue are analyzed under the language of the applicable criminal statutes.

The photograph that the Government relies upon for Count I does not depict any nudity. The photograph is of a student seated on a chair at a desk or table in a classroom. The student is wearing a one piece swimsuit. The student has their feet up on the seat of the chair with their heels pulled towards their thighs. The student's legs are open. A wide metal bar under the desk largely blocks the view of the genital area. Even if the metal bar did not block the view, the genital area would be covered by the swimsuit. The photo is from the perspective of underneath

11

the desk. The photo shows essentially all of the student's body other than their head, as well as the classroom around and behind the student. The student has cards in their hands.

The student is not wearing inappropriate attire for their age. There is no evidence that Mr. Haslach in any way directed or controlled what the student was wearing. It is seemingly what the child chose to wear and it could not fairly be claimed to be age inappropriate. The student also is not depicted in unnatural poses. The student is not seductively posed. There is no evidence that Mr. Haslach in any way directed or controlled how the student sat. It is seemingly how the student themselves chose to sit on the chair.

The setting of the image is in a classroom at a school. That setting is not sexually suggestive. The photograph does not suggest sexual coyness. Again, it is a child sitting in a chair in a classroom. No suggestive facial expressions or actions are depicted. The child is not striking an unnatural pose. The image certainly does not suggest a willingness of the minor to engage in sexual activity. The image does not portray the student as a sexual object. There are no captions associated with the photograph. The view of the genital area is largely blocked by a wide metal bar, so the largely unobservable genital area cannot be said to be the focal point of the image. The overall content and circumstances of the photograph do not create a sufficient basis for the Government to be allowed to proceed with this charge.

The application and analysis of the *Dost* factors in *United States v. Steen*, is instructive here. 634 F.3d 822 (5th Cir. 2011). *Steen* involved surreptitious video recording a 16 year old at a tanning salon. *Id*., at 824. In the video, her pubic region was visible on the right edge of the frame for approximately 1.5 seconds. *Id*. Steen was charged with production of child pornography for using a minor to produce a video recording that involved a lascivious exhibition

of the genitals or pubic area. *Id*., at 824-25. He was convicted at trial and appealed the sufficiency of the evidence.

In reviewing the case, the court noted that a depiction of mere nudity was not sufficient because the statute requires a depiction of sexually explicit conduct. *Id*., at 826. The court then turned to *Dost* and the statutory text and held that the evidence was insufficient to find a lascivious exhibition of the genitals. *Id*., at 827. It also noted that "these [*Dost*] factors have never been deployed where a defendant's conduct said to be criminal under the statute at issue proved to be no more than voyeurism." *Id*.

The court found that a tanning salon is not a sexually suggestive setting, and that the settings traditionally meeting that standard are beds or bedrooms. *Id*. Here, the setting, a classroom, also is not sexually suggestive. It is obviously not the bed or bedroom *Steen* notes as the traditional setting meeting that standard, which weighs against any finding that the setting here was sexually suggestive.

The court further found that the minor's movements were not unnatural for someone who is tanning, and because she was unaware that she was being filmed her movements were natural. *Id. "*Under certain circumstances, lying on one's back may be sexually suggestive, but that is not the case when the non-sexual activity being displayed requires one to lie on the back," such as tanning. *Id*. The same is true in the present case. The student was unaware the photograph was being taken. Her chosen method of sitting on the chair was natural because it is simply how she chose to sit on the chair.

The court ruled that "[t]he fifth factor, suggesting sexual coyness, is irrelevant in this case because C.B. did not know she was being filmed. She neither acts coy nor willing to engage in sexual activity." *Id*. In the present case, again, the student did not know the photograph was

13

being taken and thus there can be no finding that the image depicts her acting coy or exhibiting a willingness to engage in sexual activity.

The *Steen* court acknowledged the presence of nudity in the video, but stated "[s]urreptitiously filming a nude tanner, on its own, does not meet the standard for producing child pornography." *Id*. The under the desk photo at issue in this case contained no nudity. But even if it had captured nudity, that is not necessarily equivalent to the lascivious exhibition of the genitals required by the statute for criminal culpability.

Mr. Haslach disputes the Government's assertion that he intended to catch a "slip" of a bathing suit when the under the desk photo was taken. And any claims by the Government that he admitted to such an intention in taking that picture are unsupported by the record. (*Compare* T. 48-50 and Dkt. 38, p. 11.) But even if it were to be assumed, solely for the sake of argument, that he had hoped to catch a "slip" of the bathing suit when the under the desk photo was taken, all that a bathing suit slip would have resulted in was a depiction of mere nudity rather than actual sexually explicit conduct, such as a lascivious exhibition of the genitals, as required by the statute because there is no evidence, given the totality of the circumstances, that the photograph would have captured the student displaying her genitalia or pubic area in a lustful manner that connotes the commission of a sexual act. *See Hillie*, 39 F.4th at 694.

The decision in *Steen* also included an assessment, and some criticism, of the sixth factor related to whether an image elicits a sexual response in the viewer.

> Even if one assumes Steen was stirred by his voyeuristic pursuits, there is insufficient evidence to conclude that the image of C.B.'s *genitals* was designed to elicit a sexual response or whether, perhaps, merely being a voyeur excited Steen. When a photographer selects and positions his subjects, it is quite a different matter from the peeking of a voyeur upon an unaware subject pursuing activities unrelated to sex.

*Steen*, 634 F.3d at 828 (*emphasis in original*; internal footnote omitted).

14

In a concurrence, one judge set forth criticisms of the *Dost* factors as a whole, with particular emphasis on the sixth factor.

> The *Dost* factors are not definitionally equivalent to the statutory standard of "lascivious exhibition of the genitals," but many courts have treated them as such, even requiring that a certain number of factors be present for pornography convictions. As a result, these factors often create more confusion than clarity.
>
> The sixth factor, which asks whether the visual depiction was intended to elicit a sexual response in the viewer, is especially troubling. Congress did not make production of child pornography turn on whether the maker or viewer of an image was sexually aroused, and this *Dost* factor encourages both judges and juries to improperly consider a non-statutory element. A pedophile may be aroused by photos of children at a bus stop wearing winter coats, but these are not pornographic. Conversely, a photographer may be guilty of child pornography even though he is not aroused by the photos he produces purely for financial gain. Regardless of whether the photographer was aroused by the images he produced, to qualify under § 2251, the images must show a minor being used to engage in sexually explicit conduct.

*Id*., at 829 (internal footnote omitted).

As was earlier argued in this Memorandum, the *Dost* factors should be rejected in total and the statutory interpretation and analysis developed in *Hillie* should be applied here. Regardless, the sixth *Dost* factor is particularly problematic because it encourages improper consideration of circumstances that have nothing to do with whether a picture violates the language of the statute. The statute at issue creates criminal liability based on the content of the photograph, not based on the subjective response it might elicit in a particular viewer. Consideration of this factor "stray[s] to far" from the statutory language and applicable case law. *See Hillie*, 39 F.4th at 688.

It was ultimately held that there was insufficient evidence to support Steen's conviction and that his "case should not have gone to the jury." *Steen*, 634 F.3d at 828. Here, the

15

Government's allegation in Count I should not be allowed to proceed to a jury because there is insufficient evidence.

Given the nature, characteristics and overall content of the under the desk photograph at issue, and the circumstances as a whole, this Court should find as a matter of law that there is insufficient evidence that image depicts sexually explicit conduct, such as a lascivious exhibition of the genitals, and that there is insufficient evidence that Mr. Haslach attempted to produce any image depicting that statutorily prohibited content. Due to the insufficiency of the evidence, Count I should be dismissed.

## II. Motion to Suppress Related to Maplewood Search Warrant

The Court should suppress any and all evidence obtained as a result of the search warrant executed at Mr. Haslach's apartment in Maplewood because the warrant lacked particularity, was overbroad, facially invalid and lacked sufficient probable cause. Defendant further seeks suppression of any statements he made during, or as a result of, the execution of that Maplewood search warrant as fruit of the poisonous tree.

### A. Lack of Specific Apartment Number Requires Suppression

The "Premises" section of the search warrant that was granted did not include a specific apartment number. (Ex. 1.) This lack of particularity means that the warrant was facially overbroad and invalid in its entirety, and requires suppression of any evidence collected as a result of its execution.

The Fourth Amendment of the United States Constitution protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, and requires that any search warrants be supported by probable cause and describe, with

particularity, the place to be searched, and the persons or things to be seized. U.S. Const. amend. IV.

The Fourth Amendment requires that a warrant be supported by probable cause in order to be valid. If an affidavit in support of a search warrant sets forth sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place, probable cause to issue the warrant has been established. *United States v. Hudspeth*, 525 F.3d 667, 674 (8th Cir. 2008). Where there is no evidentiary hearing before a Magistrate Judge, the probable cause determination must be based upon only that information which is found within the four corners of the affidavit. *Id.*

"The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." *Groh v. Ramirez*, 540 U.S. 551, 559, 124 S. Ct. 1284, 1291, 157 L. Ed. 2d 1068 (2004). The purpose of the particularity requirement is not limited to the prevention of general searches, but also assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search. *Id.*, 540 U.S. at 561.

"If a warrant fails to describe with particularity the place to be searched, it is void." *United States v. White*, 416 F.3d 634, 637 (7th Cir. 2005). "When a search involves a building with multiple, separate units, the warrant must specify the precise unit that is the subject of the search to satisfy the particularity requirement." *Id.* "[A] warrant which describes an entire building when cause is shown for searching only one apartment is void. *United States v. Hinton*, 219 F.2d 324, 326 (7th Cir. 1955).

Here, the "Premises" section of the search warrant failed to specify which apartment was to be searched. Instead, it listed the address for the entire apartment building. The "Premises"

17

section of the search warrant reads as follows: "1257 Century Ave N, Maplewood, MN 55119 and all garages and all storage areas associated with that residence." (Ex. 1, P. 1 of 4.[1]) This language authorized a search of the entirety of the building along with all garages and storage areas, and thus rendered the search warrant fatally overbroad. The failure to state a specific apartment number means that the search warrant lacked the necessary particularity and was void.

Detective Mark was aware from his investigation that 1257 Century Ave. N. was the address for an entire apartment building that was made up of multiple individual units. (T. 44-45.) Thus, Detective Mark was on notice that the search warrant should specify a particular apartment. But the "Premises" section of the search warrant that was granted did not contain a specific apartment, which violates the particularity requirement and requires suppression of any evidence obtained as a result of that search warrant.

The fact that the apartment number appeared on page two of the search warrant does not cure this defect. On page two of the search warrant, in a section that is describing the "things" to be searched for and seized, it is stated that during the execution of the search of "1257 Century Ave N, Apt. 25" officers were authorized to obtain any biometrics necessary to unlock devices. (Ex. 1, P. 2 of 4.) This mention of a specific apartment in the "things to be seized" section of the warrant does not cure the defect, because it did not limit the fact that the warrant authorized a search of the entire building based on the language in the "Premises" section, which is the section that actually delineates the place to be searched.

What Detective Mark requested, and what he was authorized to do by the warrant that was granted, was to search the entirety of the building at "1257 Century Ave N, Maplewood, MN 55119 and all garages and all storage areas associated with that residence." (Ex. 1, P. 1 of 4,

---

[1] This citation to Page 1 of 4, and any citations in that format hereafter in regard to Exhibit 1, refers to the pagination appearing in the bottom right hand corner of the pages of Exhibit 1.

4 of 4, 2 of 18.) The *place* that the warrant authorized a search of was in no way, shape or form restricted by a reference to an apartment number appearing in the section of the warrant addressing the things to be seized. The search warrant still lacked sufficient particularity despite this reference and was still facially invalid.

Further, the fact that an apartment number may have been referenced in the search warrant *application* also does not cure this defect. Even if an application used to obtain a warrant provided sufficient particularity, that does not save the search warrant itself from its facial invalidity. *Groh*, 540 U.S. at 557. "The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Id*.

"The traditional rule is that the generality of a warrant cannot be cured by the specificity of the affidavit which supports it because, due to the fundamental distinction between the two, the affidavit is neither part of the warrant nor available for defining the scope of the warrant." *United States v. Johnson*, 541 F.2d 1311, 1315 (8th Cir. 1976). "Specificity is required in the warrant itself in order to limit the discretion of the executing officers as well as to give notice to the party searched." *Id.* There can be an exception where the application is properly "incorporated" into the search warrant itself.

> However, where the affidavit is incorporated into the warrant, it has been held that the warrant may properly be construed with reference to the affidavit for purposes of sustaining the particularity of the premises to be searched, provided that a) the affidavit accompanies the warrant, *and* b) the warrant uses suitable words of reference which incorporate the affidavit therein.

*Id*. (*emphasis added*).

The exception set forth in *Johnson* requires that both circumstances, accompaniment and incorporation of the application, be present. *Id*. Here, there is no language in the search warrant

19

that incorporates any information from the application and there is no evidence that the application accompanied the warrant at the time of the search.

*Johnson* involved a reference in the search warrant to "U.S. currency as described in the affidavit." *Id*. Here, no such language appears in the search warrant as it pertains to the location to be searched. The warrant does not include any "suitable words of reference which incorporate the affidavit therein," and thus it cannot be held that any information in the application regarding the specific apartment number was somehow incorporated into the warrant itself by reference. *Johnson* also involved a holding that the affidavit had accompanied the warrant at the time of the search based on the defendant's testimony that the officers showed him a list of the serial numbers related to the currency and matched the numbers up for him. *Id*., at 1315-16. No such evidence of accompaniment exists in the present case.

Here, there is neither evidence that the warrant properly incorporated information from the application, nor that the application accompanied the warrant at the time of its execution. The exception from *Johnson* requires the presence of *both* incorporation and accompaniment. But neither are present here. Thus, the general rule applies in this case and the generality of the warrant cannot be cured by any specificity that may have been present in the application.

The Government, in its Response to these motions, cited the *Lyons* and *Clement* cases involving search warrants that included the wrong address or the wrong apartment number. (Dkt. 38, p. 16.) Neither of those cases involved a complete lack of an apartment number, and those cases are inapposite as a result. The issue here is not that the wrong apartment was listed. The issue is that no apartment number was listed, which creates a distinctly different particularity issue than a warrant that has the wrong number.

20

*Lyons v. Robinson* involved a search warrant that listed the wrong street name. 783 F.2d 737, 738 (8th Cir. 1985). The officer had the house number right but apparently mixed up the cross street with the street the home's address was on due to the intersection of those two streets in front of the home. *Id. United States v. Clement* involved a search warrant that contained the wrong apartment number. 747 F.2d 460, 461 (8th Cir. 1984). The warrant authorized a search of apartment 4, but law enforcement searched apartment 3. *Id*.

The warrant in *Lyons* misnamed the street. It did not completely leave a street name out. The warrant in *Clement* listed apartment number 4 instead of number 3. It did not fail to provide any apartment number whatsoever. The question of whether an erroneous address is particular enough is a different question than whether a warrant for an entire apartment building that fails to specify a precise apartment provides sufficient particularity.

The search warrants in *Lyons* and *Clement* described a particular house and a particular apartment, respectively, that were to be searched. Those descriptions included errors in street name in one instance, and the wrong apartment number in the other. Here, the "Premises" section of the search warrant did not list any apartment number whatsoever. This constitutes a lack of particularity that goes beyond that seen in *Lyons* and *Clements* because there was a failure to delineate one specific unit that was subject to the search. Those cases involved particular descriptions that contained errors. This case did not contain a particularized description at all because no individual apartment was specified.

The lack of particularity here resulted in authorization to search an entire apartment building including all garages and storage areas. "When a search involves a building with multiple, separate units, the warrant must specify the precise unit that is the subject of the search to satisfy the particularity requirement." *White*, 416 F.3d at 637. "[A] warrant which describes an

entire building when cause is shown for searching only one apartment is void. *Hinton*, 219 F.2d at 326. The "Premises" section of the search warrant here did not specify any apartment number at all and was thus facially invalid and void.

The warrant in this case was obviously invalid on its face. And that is further supported by the fact that Detective Mark himself noticed the defect shortly after he had executed the warrant. Not only did he notice it, but he was so concerned about the lack of an apartment number in the "Premises" section of the warrant that he tried to reach out to the signing judge's chambers in an effort to somehow correct the error in a warrant that had already been executed.

Detective Mark's testimony that the lack of an apartment number might be attributable to a software error should not be deemed credible. Detective Mark did not offer any such explanation in his correspondence with the signing judge's chambers after the warrant was executed. (T. 44; Ex. 2.) And there is no evidence that he offered any such explanation in a written police report. The first time he seemingly made anyone aware of his claim about a software error was during his testimony at the hearing on October 1, 2025.

It is also troubling that he considered the deficiency in the warrant concerning enough to contact the signing judge's chambers after the fact, yet he failed to include any of that information, or his correspondence with chambers, in any of his police reports. Regardless, the particularity requirements of the Fourth Amendment require the specification of a precise apartment number for a search warrant to be valid. "It is incumbent on the officer executing a search warrant to ensure the search is lawfully authorized and lawfully conducted." *Groh*, 540 U.S. at 563. This warrant did not contain an apartment number in the "Premises" section and was facially invalid as a result.

The glaring lack of particularity in this search warrant also cannot be saved by any good faith exception. The good faith exception does not apply where a warrant is "so facially deficient—i.e., *in failing to particularize the place to be searched* or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *United States v. Leon*, 468 U.S. 897, 923, 104 S. Ct. 3405, 3421, 82 L. Ed. 2d 677 (1984)(*emphasis added*).

The Court need not speculate as to what executing officers may have thought had they cared to conduct even a rudimentary review of the warrant prior to execution. Here, the facial deficiency of the warrant is evidenced by Detective Mark's recognition of the problem that the lack of specifying a particular apartment presented. He himself noticed it, albeit shortly after execution, and he was so concerned that he reached out to the chambers of the signing judge in an effort to rectify the deficiency after the fact. That Detective Mark noticed the lack of an apartment number speaks to how obvious the deficiency was, and that he was concerned enough to reach out to chambers speaks to the gravity of that deficiency. The lack of a specific apartment number was something that any reasonable officer should have noticed. Failure to provide the necessary specificity and particularity regarding the place to searched should be obvious to any officer who would have cared to actually review the search warrant, and thus prohibits the application of the good faith exception.

The blatant lack of particularity in the "Premises" section of the search warrant due to the failure to state a specific apartment number renders the entirety of the search warrant facially invalid and prevents it from being saved by any good faith exception. Any evidence seized as a result of the execution of that invalid warrant, whether it was seized from the apartment, Mr. Haslach's person, or his vehicle, must be suppressed.

23

B.   <u>Lack of Probable Cause Because Insufficient Evidence Mr. Haslach Still Resided There</u>

The search warrant lacked probable cause because there was not sufficient information that Mr. Haslach still resided at Apartment 25 of 1257 Century Avenue North in Maplewood at the time the warrant was applied for or executed, thus requiring suppression of any evidence derived from the search of that location.

The Fourth Amendment requires that a warrant be supported by probable cause in order to be valid. If an affidavit in support of a search warrant sets forth sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place, probable cause to issue the warrant has been established. *Hudspeth*, 525 F.3d at 674. Where there is no evidentiary hearing before a Magistrate Judge, the probable cause determination must be based upon only that information which is found within the four corners of the affidavit. *Id.*

"There must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue." *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000). "[T]he facts in an affidavit supporting a search warrant must be sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search and not simply as of sometime in the past." *United States v. Grubbs*, 547 U.S. 90, 95, n. 2 (2006).

Here, there is evidence that Mr. Haslach may have been connected to that residence at some point in the past, but there is insufficient information in the application to show he still resided there at the time the search warrant was applied for or executed.

There was no information in the application for the search warrant about Mr. Haslach having been observed at 1257 Century Ave. N. The detective may have testified about

24

observations of defendant exiting that building generally, but no information related to that was actually contained within the search warrant application, and that cannot be properly considered in this analysis. (Ex. 1.) Where there is no evidentiary hearing before a Magistrate Judge, the probable cause determination must be based upon only that information which is found within the four corners of the affidavit. *Hudspeth*, 525 F.3d at 674.

Further, there was insufficient information to support the claim that Mr. Haslach still resided in Apartment 25 at the time the search warrant was applied for or executed. Detective Mark never spoke with a landlord or obtained other records related to Mr. Haslach's current tenancy. (T. 46-47.) Law enforcement never observed Mr. Haslach leaving Apartment 25 specifically. (T. 46.)

All the Court has been presented with is information that Mr. Haslach was connected to that apartment at some prior date. His wife's name was on the Comcast account at that address, which an IP address was linked to, as determined by the BCA prior to forwarding the Cybertip to Detective Mark. (T. 41.) But there is also evidence that his wife no longer resided at that address at the time the search warrant was applied for. (Ex. 1, p. 15 of 18.) The fact that Mr. Halsach's driver's license listed Apartment 25 as his residence, based on a driver's license record check that occurred at an unspecified date, is insufficient. Detective Mark agreed that people do not always timely update their apartment number or residence on their driver's license after moving. (T. 55.)

For these reasons, there was insufficient probable cause connecting Mr. Haslach to Apartment 25 at the time the search warrant was applied for and executed, and evidence obtained as a result of any search conducted there must be suppressed.

C.   Statements Made by Mr. Haslach Should be Suppressed as Fruit of the Poisonous Tree

Any statements Mr. Haslach made during, or as a result of, the execution of that Maplewood search warrant should be suppressed as fruit of the poisonous tree. "The exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or fruit of the poisonous tree." *United States v. Hastings*, 685 F.3d 724, 728 (8th Cir. 2012).

"In a 'fruit of the poisonous tree' doctrine case, a constitutional violation has occurred, and the issue is whether law enforcement obtained evidence 'by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " *United States v. Alvarez-Manzo*, 570 F.3d 1070, 1077 (8th Cir. 2009) (*quoting Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)).

The fruit of the poisonous tree doctrine can apply to statements made by a defendant. *United States v. Yorgensen*, 845 F.3d 908, 913 (8th Cir. 2017). In determining whether there is a sufficient connection warranting suppression between incriminating statements and an arrest or search that violated the Fourth Amendment, courts should consider whether any *Miranda* warning was given, the temporal proximity of the unconstitutional conduct and the statements, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct at issue. *Id*., at 914.

As argued in Sections II.A and II.B, the search warrant that precipitated Mr. Haslach's arrest and search of his person, vehicle and apartment was facially invalid and unsupported by probable cause. Mr. Haslach was subsequently interrogated within 30-45 minutes of when the arrest and execution of the warrant began. (T. 32-33.) The fact that Mr. Haslach was there speaking with law enforcement at that time was the product of an invalid search warrant.

26

Although he was given a *Miranda* advisory, that circumstance is "not dipositive" on the issue of suppression. *Yorgensen*, 845 F.3d at 914.

The limited time that passed between the beginning of the execution of the warrant and the interrogation requires suppression. According to Detective Mark's testimony, only 30-45 minutes had passed from when Mr. Haslach was taken into custody at the time execution of the search warrant began and when the interrogation began. The temporal proximity between the execution of that search warrant, coupled with Mr. Haslach's knowledge of what law enforcement would find as a result of that search, means that any statements he decided to make were tainted by, and a product of, that illegal search and seizure that had begun less than an hour prior. By comparison, *Yorgenson* involved the passage of two days. *Id*. Here, the limited passage of time weighs in favor of suppression.

For these reasons, any statements Mr. Haslach made in the aftermath of the execution of the search warrant were fruit of the poisonous tree as the product of the unconstitutional search and seizure conducted pursuant to the facially invalid warrant, and those statements must be suppressed.

<div style="margin-left:40%;">

Respectfully submitted,
**THE LAW OFFICE OF JOHN J. LEUNIG**

</div>

Date: <u>November 4, 2025</u>          /s/ Justin J. Duffy
          Justin J. Duffy, Attorney License No. 397441
          7900 Xerxes Avenue South, Suite 815
          Bloomington, Minnesota 55431
          Licensed in United States District Court for the
          District of Minnesota
          (952) 540-6800